UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| KATHLEEN JOYCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:10-cv-00310-JAW |
| | ) | |
| POSTMASTER GENERAL, UNITED | ) | |
| STATES POSTAL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

In this employment discrimination case, the employer moves for summary judgment, asserting that an unsuccessful job applicant failed to raise genuine issues of material fact on her age, gender, and disability discrimination claims. The Court agrees with the employer that there is no evidence to support the employee's disability claim but concludes that, based on the employer's potentially inconsistent handling of the criminal and employment histories of the successful applicants and the Plaintiff, there is sufficient evidence in this record to generate jury questions as to her age and gender discrimination claims.

## I.   STATEMENT OF FACTS

### A.   Procedural History

On July 26, 2010, Kathleen Joyce, acting *pro se*, filed a complaint in this Court against the Postmaster General of the United States (Postal Service), alleging that the Postal Service had discriminated against her because of her age, sex, and

disability and seeking relief under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act (Title VII), and the Americans with Disabilities Act (ADA). *Compl.* (Docket # 1). On October 18, 2010, the Postal Service filed its answer. *Def.'s Answer.* (Docket # 12).

On April 25, 2011, the Postal Service moved for summary judgment and filed its statement of material facts. *Mot. for Summ. J.* (Docket # 18) (*Def.'s Mot.*); *Statement of Undisputed Material Facts* (Docket # 19) (DSMF). On May 16, 2011, Ms. Joyce filed one document, responding to both the Postal Service's motion and its statement of facts. *Opp'n to Mot. for Summ. J.* (Docket # 24) (*Pl.'s Opp'n*; PRDSMF). On May 31, 2011, the Postal Service replied to Ms. Joyce's memorandum and to her response to its statement of material facts.[1] *Reply Mem.* (Docket # 25) (*Def.'s Reply*); *Reply Statement of Material Facts* (Docket # 26) (DRPRDSMF). Although Ms. Joyce had not filed any additional statements of fact with her opposition, she attached documents that expanded the factual record and so the Postal Service included a reply statement of facts. *Def.'s Reply Statement of Facts in Response to Pl.'s Filing* (Docket # 26) (DRPSAF).

On July 7, 2011, Ms. Joyce moved to supplement the record. *Mot. to Supplement* (Docket # 27) (*Pl.'s Mot. to Supplement*). On July 29, 2011, the Postal Service filed its opposition to her motion to supplement. *Def.'s Opp'n to Pl.'s Mot. to Supplement* (Docket # 28) (*Def.'s Supplement Opp'n*). On August 12, 2011, Ms.

---

[1] The Postal Service objected to each of Ms. Joyce's material facts, saying each "should be stricken as violating Local Rule 56(f) by failing to provide specific citation to record material properly considered on summary judgment." DRPRDSMF at 2-10. The Court overrules each of the Postal Service's

Joyce replied.  *Resp. to Def.'s Opp'n to Pl.'s Mot. to Supplement* (Docket # 29) (*Pl.'s Supplement Reply*).

In reviewing Ms. Joyce's responses, it was apparent that she was under the misimpression that the Court had the administrative record available and, on September 29, 2011, the Court ordered her to file the record.  *Order On Filing Record* (Docket # 30).  On October 4, 2011, the Postal Service responded to the Court's Order, indicating that it had no objection but asking for the opportunity to file an amended reply to address any new record material.  *Def.'s Resp. to Ct. Order on Filing Record* (Docket # 31).  Ms. Joyce filed her record-based response on October 14, 2011.  *Pl.'s Resp. to Ct. Order on Filing Record* (Docket # 32) (*Am. PRDSMF*).  The Court granted the Postal Service's motion to reply to Ms. Joyce's filing that day.  *Order on Mot. to File Am. Reply to Statement of Facts* (Docket # 33). On October 21, 2011, the Postal Service filed its reply.[2]  *Def.'s Am. Reply Statement of Material Facts* (Docket # 34) (*Am. DRPRDSMF*).

### 1.     Kathleen Joyce's Complaint

In her Complaint, Ms. Joyce says that she previously worked for the Postal Service and that, in 1986, she injured her shoulder and upper right arm, lost time from work, and received workers compensation benefits through 1997.  *Compl.* ¶ 3. In February 2008, when she was 52 years old, she applied for a Mail Handler position at the Southern Maine Processing & Distribution Center.  *Compl.* ¶ 12.

---

[2] Ms. Joyce did not merely file the court-ordered record; she amended and corrected her opposing statement of material facts without obtaining prior permission to do so.  In its amended reply, the Postal Service objected to Ms. Joyce's supplemental filing.  *Am.* DRPRDSMF at 1.  However, by allowing the Postal Service to amend its reply, the Court obviated any prejudice to the Postal Service.  The Court overrules the objection.

She says the Postal Service told her that it was interviewing twenty people for five positions and that the decisions would be based on the applicants' overall qualifications. *Id.* ¶ 13.  On March 20, 2008, the Postal Service informed her it had not selected her for the position.  *Id.* ¶ 15.  She says the Postal Service hired eight people for the position.  *Id.* ¶ 16.  According to Ms. Joyce, the ages of the successful applicants were 30, 62, 61, 30, 26, 47 and 38,[3] and five of the eight successful applicants were male.  *Id.* ¶¶ 17, 21.  She further alleges that when she applied, she was disabled within the meaning of the ADA.  *Id.* ¶ 26.

### 2.   The Postal Service's Motion for Summary Judgment

Contending that Ms. Joyce cannot produce any evidence of direct discrimination, the Postal Service says she cannot meet the requirements of the burden-shifting formula established by the Supreme Court.[4]  *Def.'s Mot.* at 6-7.  It says that the people responsible for the hiring decision were unaware of her disability and that their decision was based on three relevant and nondiscriminatory "strikes" against Ms. Joyce: a previous firing, a prior criminal charge or conviction, and an erratic employment history.  *Id.*

---

[3] Ms. Joyce's Complaint lists these as "[t]he approximate ages of those selected."  Compl. ¶ 17.  Her approximations appear to be off; according to the Postal Service, Amanda Bouchey was 29, Rachel Stevenson was 29, Richard Renault was 62, Robert Kitch was 60, Tammy Glazier was 29, Robert Samson was 25, Paul Dean was 47, and Michael Morin was 38.  For purposes of this motion, the Court adopts the Postal Service's calculation of the successful applicants' ages as it is more favorable to Ms. Joyce, the nonmoving party.
[4] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

B.      **Factual Background**

1.      **The Summary Judgment Praxis**

In accordance with "conventional summary judgment praxis," the Court recounts the facts in the light most favorable to Ms. Joyce's case theory, consistent with record support. *Gillen v. Fallon Ambulance Serv., Inc.,* 283 F.3d 11, 17 (1st Cir. 2002). In compliance with this obligation, the Court recites certain events as facts even though the Postal Service disputes them.

The Court's job is made more difficult because Ms. Joyce represents herself and, although she responded to the Postal Service's statement of material facts, she has not fully complied with the local rules. Local Rule 56(c) requires that the party opposing a motion for summary judgment "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, . . . support each denial or qualification by a record citation as required by this rule." D. ME. LOC. R. 56(c). Ms. Joyce responded—without clearly numbered paragraphs—to the Postal Service's statement of material facts by ignoring many, declaiming some as false, and affirmatively proffering facts for others. PRDSMF at 1-3. Her second filing did not cure these deficiencies. *Am.* PRDSMF at 1. The Court has done its best to read these multiple statements of material fact together to determine where the parties agree and differ. It has treated the unanswered statements as admitted and the denied statements as denied and it has construed all facts in the light most favorable to Ms. Joyce, the nonmoving party.

### 2.     Objections and Supplementation Request

Before reciting the facts, the Court must resolve the parties' objections and rule on Ms. Joyce's Motion to Supplement.

### a.     Priority Consideration or Reinstatement Rights

The parties disagree about whether, because she had previously been employed by the Postal Service, Ms. Joyce was entitled to "priority consideration" or "reinstatement rights" in the Postal Service's hiring process. Ms. Joyce insists that Lynn Bickford, the General Clerk for Personnel, assured her that she would be given "priority consideration." The Postal Service says that although Ms. Joyce had "reinstatement rights," it was not required to give her "priority consideration" in the hiring process.

The Postal Service states that Ms. Bickford spoke with Ms. Joyce before the interview and told her that, as a former Postal Service employee, she was entitled to reinstatement rights. DSMF ¶ 4. According to the Postal Service, this meant that Ms. Joyce could take the Postal Service employment examination non-competitively and obtain an interview for the Mail Handler position irrespective of her exam score. *Id.*

Ms. Joyce denies the Postal Service's paragraph 4 and cites pages 50 and 265 of the Equal Employment Opportunity Commission (EEOC) Investigative File.[5]

---

[5] Ms. Joyce originally contended that Paragraph 4 was "false" and cited pages 133, 135, and 265 of the "ROI" for support. PRDSMF at 1 (presumably referring to a Record of Investigation by the EEOC). In her second opposition, she continues to deny the Postal Service's statement, but states "pgs 133, 135 was incorrect, 50 and 265." *Am.* PRDSMF at 1 (citing EEOC Investigative File).

*Am.* PRDSMF at 1.[6]  Her reference to page 50 corresponds to a letter Ms. Joyce

wrote to Lynn Bickford dated March 26, 2008.  *Id.* at 3.  In it, she contests what she

felt was an incompetent interview by her interviewer, Robert Burton.  *Id.*  She also

wrote:

> Absolutely no mention was made of my prior service at the USPS and
> was told by Mr. Burton that I was not entitled to reinstatement rights
> and would still have to serve a 180 day Probationary Period.  He also
> mentioned that he wouldn't be using age as a factor.  I disagree on all
> three of these points.  Additionally, I had spoken with you on the
> telephone on March 5, 2008 and you assured me I was being
> considered for reinstatement.  When we had our telephone
> conversation last week you told me that I was given priority
> consideration because you gave me the first interview, hence in your
> words, priority consideration.

*Id.*

Ms. Joyce also referred to page 265, which appears to be an excerpted page

from "Handbook EL-312, September 2001, Updated With Postal Bulletin Revisions

Through December 22, 2005."  *Id.* at 4.  Under section 233.32, entitled

Reinstatement, "[a] former career postal employee . . . must meet the qualification

requirements for the position, including any currently required examinations.

Appointing officials may, but are not obligated to, administer examinations

noncompetitively to applicants who have not met the examination requirement, if

they determine that these applicants are otherwise viable candidates."[7]  *Id.*  The

---

[6] Ms. Joyce's responses to the Postal Service's statements of material facts do not fully conform to local practice and are somewhat difficult to cite.  Where she interjects, her responding statement is cited by reference to page number because Ms. Joyce failed to number her own paragraphs.

[7] The Postal Service objects to Ms. Joyce's response to its ¶ 4 on the ground that she changed the record citations without first requesting and receiving permission to correct the errors in her original Opposition to Defendant's Motion for Summary Judgment.  *Am.* DRPRDSMF at 2.  The Court overrules the objection.

Postal Service objects to Ms. Joyce's denial, asserting that she failed to cite an appropriate part of the record and only made the "bare claim" that the Postal Service's paragraph four is "false." DRPRDSMF at 2.

Generally, in considering a motion for summary judgment, the Court is required to credit the non-movant's version of the facts and this means that the Court must accept Ms. Joyce's recollection if it is based on probative evidence. *Gillen,* 283 F.3d at 17. Here, Ms. Joyce herself asserts that Lynn Bickford, a General Clerk in the Postal Department, told her that she would be given "priority." Ms. Joyce's recollection is buttressed by her letter dated March 26, 2008, confirming her understanding of Ms. Bickford's alleged representation.[8] Finally, Ms. Bickford filed an affidavit saying that among her job duties was "providing procedural guidance to applicants." DRPRDSMF Attach. 1, *Supplemental Decl. of Lynn Bickford*, ¶ 4. Because Ms. Joyce's assertion is supported by probative evidence, the Court accepts Ms. Joyce's contention that Ms. Bickford told her she would have priority in hiring.[9]

---

[8] It remains an open question whether Ms. Joyce's March 26, 2008 letter to Ms. Bickford is admissible. However, the Court must view the facts supporting admissibility in the light most favorable to Ms. Joyce. Here, for purposes of the motion, the Court treats her letter as admissible "to rebut an express or implied charge that the declarant recently fabricated" the statement. FED. R. EVID. 801(d)(1). A second possible basis for admission is that it is an adoptive statement by an opposing party under Rule 801(d)(2), assuming that the circumstances surrounding the Joyce letter would have triggered a response from Ms. Bickford. *See* FED. R. EVID. 801(d)(2); *Pilgrim v. Trs. of Tufts Coll.*, 118 F.3d 864, 870 (1st Cir. 1997) (test to determine whether a party has manifested belief in the truth of a document is "whether the surrounding circumstances tie the possessor and the document together in some meaningful way").

[9] The Court recognizes the danger that a party could effectively bootstrap her way around a dispositive motion simply by asserting her side of a contested fact and thereby manufacturing a disputed fact. The First Circuit has reiterated that to prevail in an employment discrimination case, it is not enough for a plaintiff "merely to impugn the veracity of the employer's justification." *Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 246 (1st Cir. 2006) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 824 (1st Cir. 1991)). Nevertheless, here, Ms. Joyce can only present her side of the interchange

b.      **Motion to Supplement**

i.      **Ms. Joyce's Motion**

On July 7, 2011, Ms. Joyce moved to supplement the record to include her actual criminal history. *Pl.'s Mot. to Supplement*. The context of this motion is the Postal Service's assertion in its statement of material facts that it considered "three particular characteristics to be important" in the hiring decision, among them "whether an applicant had any prior criminal charges or convictions." DSMF ¶¶ 37-38. The Postal Service asserted:

1)      that during the interview, the Postal Service learned that Ms. Joyce had a prior criminal charge or conviction, DSMF ¶ 42;

2)      that Michael Morin admitted having been convicted on July 17, 1997 of three Class D misdemeanors, which appeared to be related to the break-up of a romantic relationship, DSMF ¶ 60;

3)      that Rachel Stevenson admitted that she had been charged with and pleaded guilty to a misdemeanor charge of theft in 2002, DSMF ¶ 75;

4)      that unlike two of the successful applicants, Ms. Joyce expressed no remorse for her prior conviction of leaving the scene of an accident, DSMF ¶79; and

5)      that Ms. Joyce's conviction took place in March 2005, and was therefore more recent than the criminal convictions for Michael Morin (1997) and Rachel Stevenson (2002), DSMF ¶ 80.

In her response, Ms. Joyce wrote that the Postal Service's three claimed important criteria were "not the criteria for hiring," that the information about Mr. Morin's

---

with Ms. Bickford and absent some showing that it is not to be credited at all, the Court is obligated to view Ms. Joyce's version in the light most favorable to her.

criminal conviction and remorse was "false," that Ms. Stevenson had stolen numerous articles, that there was "no spot on the application for remorse," and that the persons responsible for hiring had drawn "false and inaccurate conclusions" about Ms. Joyce's degree of remorse.  PRDSMF at 1-2.

On July 7, 2011, after the parties had filed memoranda and statements of material facts, Ms. Joyce moved to supplement the record.  *Mot. to Supplement* at 1. She enclosed a copy of a letter from the Postal Service dated June 23, 2011, which itself included the Postal Service's copy of her criminal history record.  *Id.* Attach. 1, *Letter from Theresa Dougherty, Labor Relations Specialist, NNE District, United States Postal Service, to Kathleen Joyce (Jun. 23, 2011)* (*Dougherty Letter*); Attach. 2, *Me. State Bureau of Identification*, *Criminal History Record* (*Criminal History Record*).  She pointed out that the record did not include leaving the scene of an accident.  *Mot. to Supplement* at 1; *Criminal History Record* at 1-4.  She explains that the reason the leaving-the-scene conviction was not a part of her criminal history was that it was a driving conviction.  *Mot. to Supplement* at 1.  She says that she should have been put in the same category as Paul Dean, a successful applicant whom she claims had also been convicted of a driving offense.[10]  *Id.*

### ii.    The Postal Service's Objection

The Postal Service objected to Ms. Joyce's motion to supplement.  *Def.'s Supplement Opp'n*.  It notes that discovery closed on March 21, 2011 and argues

---

[10] Ms. Joyce acknowledged that the official criminal history record revealed she had been convicted of disorderly conduct in 1974.  *Pl's Mot. to Supplement* at 1.  She explained that it was thirty-seven years ago so she had unknowingly left it off her application and the Postal Service never mentioned it.  *Id.*  Assuming the Postal Service knew about this old conviction, there is no evidence that it considered this bit of ancient history in its hiring decision.

that accepting this new information would violate the Court's Scheduling Order and the Rules of Civil Procedure. *Id.* at 6-7. Furthermore, the Postal Service contends that the Court should not allow the supplementation because the new information would not generate a material dispute. *Id.* at 2-5. Finally, the Postal Service maintains that even if material, Ms. Joyce's criminal record would not substantiate a claim of pretext. *Id.* at 5-6.

### iii.   Ms. Joyce's Reply

Ms. Joyce replied, asserting that the relevant issue of material fact is whether the Postal Service treated driving convictions as prior convictions for purposes of its hiring criteria. *Pl.'s Supplement Reply* at 1. She says that Paul Dean, one of the people the Postal Service hired, had been convicted of operating after suspension, which she contends was a misdemeanor in Maine before 2008. *Id.* She suggests that "[o]thers who had criminal convictions were held to a different standard than I was." *Id.* at 2. She asserts that the "three strikes" theory was "invented by an attorney." *Id.* Finally, she maintains that she was able to obtain information about her criminal history only after requesting it under the Freedom of Information Act (FOIA). *Id.*

### iv.   Discussion

The supplemental criminal record is potentially significant because Ms. Joyce claims that the Postal Service treated her leaving-the-scene-of-an-accident (LSA) conviction differently than it treated Paul Dean's operating-after-suspension (OAS) conviction. During the application process, both Ms. Joyce and Mr. Dean

11

acknowledged their prior convictions.  However, when Lynn Bickford, the General Clerk of Personnel, reviewed Mr. Dean's official criminal history record from the state of Maine, she assumed that the conviction did not appear in his criminal history because his OAS conviction was only a driving offense, not a misdemeanor. Based on this assumption, the Postal Service did not hold Mr. Dean's conviction against him and his application was successful.

By contrast, the Postal Service counted Ms. Joyce's LSA conviction as a strike against her.  Ms. Joyce's exhibit reveals that, like Mr. Dean's criminal history record, Ms. Joyce's Maine criminal history report did not contain her LSA conviction.  Therefore, she contends that the Postal Service should have treated her LSA driving conviction the same way it treated Mr. Dean's OAS driving conviction. Viewing Ms. Joyce's criminal history in the light most favorable to her, the Court concludes that the supplemental exhibit is potentially material.

The next question is whether it should be excluded due to its late filing.  Ms. Joyce filed her Complaint on July 26, 2010; on October 18, 2010, the Court set March 21, 2011 for the close of discovery.  *Scheduling Order* (Docket # 13) at 2. According to the Postal Service's response, Ms. Joyce's FOIA request was dated June 18, 2011 and the Postal Service responded on June 23, 2011 with her criminal history record. *Dougherty Letter* at 1.  Thus, Ms. Joyce received her criminal history record five days after her inquiry.  Other than complaining that representing herself is difficult, Ms. Joyce has not explained why she could not have obtained

12

this information during discovery and presented it during the period for responding to the dispositive motion.

It is true, as the Postal Service says, that Ms. Joyce must be held to the same standards as represented litigants. *Philbrick v. Me. Dep't of Health and Human Servs.*, 616 F. Supp. 2d 123, 126 n.3 (D. Me. 2009) ("*Pro se* litigants are not excused from complying with the Federal Rules of Civil Procedure or the Local Rules of this district"); *FDIC v. Anchor Props.*, 13 F.3d 27, 31 (1st Cir. 1994). Otherwise, the playing field would not be level and the Court would run the risk of "becoming the lawyer for the unrepresented plaintiff or devoting an excessive portion of [its] time to such cases." *Clarke v. Blais*, 473 F. Supp. 124, 129 (D. Me. 2007).

Nevertheless, where the document may affect whether summary judgment is granted, its exclusion is tested against a higher standard. *See Esposito v. Home Depot, Inc.*, 590 F.3d 72, 79 (1st Cir. 2009) ("[b]ecause all parties acknowledged that the sanction carried the force of dismissal, the justification for it must be comparatively more robust"). Here, the Postal Service can hardly claim surprise or disadvantage when Ms. Joyce received this document from the Postal Service itself. In addition, Ms. Joyce was required to file a FOIA request to even obtain the record; it is curious that the Postal Service had not turned the document over earlier. Finally, the inclusion of Ms. Joyce's criminal history record does not lead to an uneven playing field as the Postal Service has had the opportunity to weigh in on the significance of the document. *Def.'s Supplemental Opp'n*.

In these circumstances, the Court GRANTS the Plaintiff's Motion to Supplement (Docket # 27) and will consider the late-filed criminal history record in ruling on this dispositive motion.

### 3.   The Facts[11]

#### a.   Kathleen Joyce Applies to the Postal Service and Is Interviewed

The Postal Service interviewed Kathleen Joyce on March 10, 2008 and it subsequently considered her for the position of Mail Handler at its Southern Maine Processing & Distribution Center (P&DC) in Scarborough, Maine.  DSMF ¶ 1.  Lynn Bickford, General Clerk, Personnel, scheduled Ms. Joyce to interview with Robert S. Burton, Supervisor, Distribution Operations at the P&DC.  DSMF ¶¶ 2-3.  Ms. Bickford informed Ms. Joyce that as a former Postal Service employee, she would have priority in hiring.  DSMF ¶ 4; PRDSMF at 1; *Am.* PRDSMF at 1.  At the same time, Ms. Bickford did not tell Ms. Joyce that her reinstatement rights would place her in any substantively better position than any other applicants who were also granted interviews.  DSMF ¶ 5.

On March 10, 2008, Mr. Burton interviewed Ms. Joyce.  DSMF ¶ 6.  Ms. Joyce believes that Mr. Burton played some part in the hiring decision.[12]  DSMF

---

[11] As noted earlier, Ms. Joyce's responses to the Postal Service's statements of material facts do not entirely conform to local practice.  She failed to respond to every numbered paragraph and instead only interposed unidentified qualified responses or denials to the statements with which she disagreed.  This leads to a lack of symmetry in the citation of the parties' agreed-upon statements, but the Court has tried to maintain citations to the record as it is—not as it should be—and therefore cites only the Defendant's statement of material facts by paragraph number.  Where Ms. Joyce does not dispute the statement, the Postal Service's version and its paragraph citation is the sole citation.  Where Ms. Joyce interjects, neglecting to number her own paragraphs, her responding statement is cited by page number.

¶ 7; PRDSMF ¶ 7; *Am.* PRDSMF ¶ 2.  During the interview, Mr. Burton got the impression that Ms. Joyce was aggressive and she seemed to question Mr. Burton's ability to conduct interviews.[13]  DSMF ¶ 8.

### b.    Mr. Burton's Recommendation

Although Mr. Burton relayed his observations of Ms. Joyce's interview behavior to the individuals ultimately making the hiring decisions for the Mail Handler positions, he also forwarded her application with a recommendation that she was suitable for the Mail Handler position.  DSMF ¶ 9.  Before the interview,

---

[12] The parties sparred over whether Mr. Burton played a role in the hiring decision.  The Postal Service says that even though he interviewed her, Mr. Burton played "no role in the Postal Service's ultimate hiring decision regarding Ms. Joyce and the Mail Handler position for which she interviewed."  DSMF ¶ 7.  Ms. Joyce denied this paragraph.  PRDSMF at 1.  In her second response to the statements of material fact, she reiterated this denial and attached a copy of Mr. Burton's March 17, 2008 letter to her, informing her that she had not been hired.  *Am.* PRDSMF at 1.  The Postal Service reiterated its position that Mr. Burton played no role in the ultimate hiring decision.  *Am.* DRPRDSMF at 2.  Although it is certainly possible that the person who interviews a job applicant and writes her about the hiring decision had no role in the decision itself, the Court concludes, viewing the record in the light most favorable to Ms. Joyce, that it is a fair inference that Mr. Burton played some role in the decision, especially because he gave information to the decision-makers about his interview with Ms. Joyce.

[13] Ms. Joyce denied this statement.  PRDSMF ¶ 8; *Am.* PRDSMF ¶ 8.  In her initial response, Ms. Joyce asserted that "at no time did Burton say I appeared aggressive" and she offered that he "confuses what took place at interview, 3/10/08, with letter I wrote after interview."  PRDSMF ¶ 8.  In her second response, she provided the March 10, 2008 letter.  *Am.* PRDSMF ¶ 8.  In it, Ms. Joyce expresses her "concerns with [her] March 10, 2008 interview," including the fact that Mr. Burton did not ask her what she had been doing for the last twenty-one years and seemed unaware of her "right to reinstatement and the rules on the probationary period for former employees."  *Am.* PRDSMF at 6.  The Postal Service contends that Paragraph 8 was not meant to imply that Mr. Burton had told Ms. Joyce at the interview that she was aggressive, but instead describes Mr. Burton's impression of Ms. Joyce at the interview.  *Am.* DRPRDSMF at 4-5.  Because the letter attached by Ms. Joyce does not contradict that fact, the Postal Service concludes that Paragraph 8 of its Statement of Material Facts remains undisputed.  *Am.* DRPRDSMF at 5.

Here, the Court agrees with the Postal Service.  The Postal Service is making an assertion about Mr. Burton's impression of Ms. Joyce during the interview.  Its statement about his impression is supported by his sworn declaration.  DSMF Attach. 5, *Decl. of Robert. S. Burton*, ¶ 14.  Although Ms. Joyce may contend that she gave Mr. Burton no reasonable grounds for his impression, she cannot say he did not have the impression he says he had.  The evidence is probative not of the truth of Mr. Burton's impression, but that it was in fact his impression and that he conveyed his impression to the decision-makers.  DSMF ¶ 9.  The Court includes the Postal Service's paragraph 8 as an accurate reflection of Mr. Burton's impression and what he told the ultimate decision-makers.

Mr. Burton had reviewed Ms. Joyce's application, which identified her social security number and date of birth.  DSMF ¶ 10.  At her interview and the Postal Service's decision not to select her for a Mail Handler position, Ms. Joyce was 51 years old.  DSMF ¶ 11.  During the interview, Mr. Burton asked Ms. Joyce to verify her date of birth and social security number, a request that he typically makes during interviews of potential employees.[14]  DSMF ¶ 12.

At the time he recommended Ms. Joyce for the Mail Handler position, Mr. Burton was not aware that she had any actual or claimed medical condition or disability, although he was aware of her gender and age.  DSMF ¶ 15.  Ms. Joyce's age, gender, and actual or claimed medical condition played no role in Mr. Burton's decision to recommend her as a potential candidate for the Mail Handler position. DSMF ¶ 16.

### c.    The Decision-Makers and Their Decisions

The individuals at the Postal Service who made the ultimate hiring decision regarding Ms. Joyce were Ausilio Lombardi and Arthur Lent.  DSMF ¶ 17.  The Postal Service hired eight Mail Handlers from the pool of applicants that included Ms. Joyce, relying on information obtained from applicants in their applications and during interviews.  DSMF ¶ 18.  The eight individuals selected by Mr. Lombardi

---

[14] Ms. Joyce denied paragraphs 13 and 14, which say that after Mr. Burton asked Ms. Joyce to verify her date of birth and social security number, she asked him to explain why he had sought that information and he replied that the Postal Service did not consider age, gender, or religion in making hiring decisions.  DSMF ¶¶ 13-14; PRDSMF at 1; *Am*. PRDSMF at 1.  The Government objected to Ms. Joyce's denial because it was not accompanied by a record reference.  *Am*. DRPRDSMF ¶¶ 13-14.  The Court overrules the Government's objection.  It would have been better practice for Ms. Joyce to have filed an affidavit, confirming her position on what Mr. Burton did not say during the interview, but the Court takes her denial at face value, because she was physically at the interview with Mr. Burton.  Viewing the record in the light most favorable to Ms. Joyce, the Court declines to include paragraphs 13 and 14 in its recitation of the facts.

and Mr. Lent and their ages on the date of the Postal Service's hiring decision were:
Amanda Bouchey, 29; Paul Dean, 47; Tammy Glazier, 29; Robert Kitch, 60; Michael
Morin, 38; Richard Renault, 62; Robert Samson, 25; and Rachel Stevenson, 29.
DSMF ¶¶ 19-27.   Mr. Lombardi and Mr. Lent considered all of those applicants
more suitable than Ms. Joyce for the Mail Handler position.   DSMF ¶ 28.   Neither
Mr. Lombardi nor Mr. Lent was aware when they declined to select Ms. Joyce that
she had a claimed or actual medical condition or disability.   DSMF ¶ 29.   Neither
Mr. Lombardi nor Mr. Lent considered Ms. Joyce's age, sex, or any claimed or actual
medical condition or disability in his decision to decline to select Ms. Joyce for the
Mail Handler position.   DSMF ¶¶ 30-31.   Two of the individuals selected by Mr.
Lombardi and Mr. Lent, Robert Kitch and Richard Renault, were older than Ms.
Joyce.   DSMF ¶ 32.   Three individuals, Amanda Bouchey, Tammy Glazier, and
Rachel Stevenson, were female.   DSMF ¶ 33.   Two individuals, Paul Dean and
Richard Renault, held veterans' preferences.[15]   DSMF ¶ 34.   Ms. Joyce did not hold

---

[15] In her original response, Ms. Joyce denied this paragraph, stating that Paul Dean was wrongly given a veterans' preference and that a veterans' preference does not guarantee employment. PRDSMF at 1.   In her amended response, she referred to specific pages of the record.   *Am.* PRDSMF at 1.   In its response, the Postal Service contended that Ms. Joyce's denials are matters of law, not fact, and that the paragraph should be deemed admitted.   DRPSAMF ¶ 34.

 Here, the Postal Service cited the sworn declaration of Mr. Lombardi for the proposition that both Mr. Dean and Mr. Renault were entitled to a veterans' preference.   DSMF ¶ 34 (citing Attach. 6, *Decl. of Ausilio A. Lombardi*, ¶ 24).   The Court reviewed Mr. Lombardi's declaration and confirmed that he stated that both Mr. Dean and Mr. Renault were so entitled.   In her original objection, Ms. Joyce contended that Mr. Dean was not so entitled, but she did not explain why.   In her amended submission, Ms. Joyce's record references do not contradict the proposition that Mr. Dean is a veteran and, furthermore, she later admitted paragraph 50, which says that Mr. Dean claimed a five-point veterans' preference for a ten-year term of active duty with the United States Navy from July 1983 to October 1993.   DSMF ¶ 50; *Am.* PRDSMF at 1-18.   Accordingly, because Ms. Joyce has admitted that Mr. Dean claimed a five-point veterans' preference for a ten-year stint with the United States Navy and because Ms. Joyce has given no basis for concluding that he was not entitled to the preference, the Court does not accept Ms. Joyce's blanket assertion that he was not so entitled. Regarding her contention that a veterans' preference does not guarantee employment, the Court accepts this proposition but this statement does not negate the application of the preference itself.

a veterans' preference.   DSMF ¶ 35.   Neither Mr. Lombardi nor Mr. Lent understood that Ms. Joyce's prior employment with the Postal Service gave her priority consideration over the other interviewed applicants.[16]  DSMF ¶ 36.

### d.   Postal Service Criteria[17]

The Postal Service says that, when making decisions regarding which applicants to select, Mr. Lombardi and Mr. Lent considered three particular characteristics to be important: (1) if an applicant had any prior criminal charges or convictions, they would consider that a strike against the applicant; (2) if an applicant had been fired from a previous position, they would consider that a strike against the applicant; and (3) if an applicant's employment history demonstrated a pattern of erratic employment, they would consider that a strike against the applicant.  DSMF ¶¶ 37-40.  Based on these three characteristics, the Postal Service states, all eight selected applicants were more suitable and better qualified for the Mail Handler position than Ms. Joyce.  DSMF ¶ 41.

---

[16] In her original response, Ms. Joyce denied this paragraph.  PRDSMF at 1.  In her amended response, she cited certain pages of the record in support of her denial.  *Am.* PRDSMF at 3-4, 6.  The basis for her denial is that the "Rules of Reinstatement were ignored as I was the only former postal employee."  PRDSMF at 1.  The Postal Service's paragraph, however, asserts what Mr. Lombardi and Mr. Lent (the two ultimate decision-makers) understood, not whether their understanding was correct.  Accordingly, the Court has accepted this paragraph over Ms. Joyce's objection.

[17] Ms. Joyce denied each of paragraphs 37 through 41, contending that these were not the actual criteria the Postal Service considered for its hiring decisions.  PRDSMF ¶¶ 37-41; *Am.* PRDSMF ¶¶ 37-41.  She asked about other qualifications, such as education, prior USPS employment, and experience.  PRDSMF ¶¶ 37-41.

The Court views Ms. Joyce's denial as a way to highlight her overall contention that the Postal Service's explanation of its decision-making is pretextual and the real reasons for its hiring decisions were discriminatory.  The Court accepts Ms. Joyce's contention as argument.  However, as a factual matter, the Postal Service has properly cited record evidence to support its factual assertion and Ms. Joyce has not provided the Court with a record basis to conclude otherwise.  The Court therefore accepts the Postal Service's paragraphs 37 to 41 as factually-based.  As the Court explains in its discussion of the merits of the motion, the Court views this evidence as sustaining the Postal Service's burden of production.

### e.    Kathleen Joyce and the Successful Candidates

During the interview process, Mr. Lent and Mr. Lombardi learned that Ms. Joyce had all three strikes against her: a prior criminal charge or conviction; a prior firing; and a history of erratic employment.  DSMF ¶ 42.  Based on the information available to Mr. Lombardi and Mr. Lent when they made their hiring decisions, five of the eight selected applicants had none of the three strikes against them, three had only one of the three strikes against them, and none had two or three of those relevant negative characteristics.  DSMF ¶ 43.

Based on the available information, Amanda Bouchey had no prior convictions or charges and had not been fired from any previous employment. DSMF ¶ 44.  She did list two periods of unemployment: one which occurred when she was 19, ten years before the Postal Service's hiring decision; and the other for a four-year period when she was a stay-at-home mother.  DSMF ¶ 45.  Mr. Lombardi and Mr. Lent did not consider this history to demonstrate a pattern of erratic employment and concluded that Amanda Bouchey appeared to have none of the three negative characteristics that Ms. Joyce had and, therefore, that she was a more suitable candidate than Ms. Joyce.  DSMF ¶¶ 45-47.

Based on the information available to Mr. Lombardi and Mr. Lent, Paul Dean had no prior criminal convictions or charges and did not have a history of erratic employment, although he did disclose in his application that he had been fired from

a position in March 2000 for excessive absences.[18]   DSMF 48; PRDSMF at 2; DRPRDSMF ¶ 48. Paul Dean had one of the three negative characteristics that Ms. Joyce had. DSMF ¶ 49. He also claimed a five-point veterans' preference for a ten-year term of active duty with the United States Navy. DSMF ¶ 50. Mr. Lombardi and Mr. Lent both considered Mr. Dean to be a more suitable candidate than Ms. Joyce. DSMF ¶ 51.

Based on the information available to Mr. Lombardi and Mr. Lent, both Tammy Glazier and Robert Kitch had no prior criminal convictions or charges, had not been fired from any previous employment, and did not have histories of erratic employment. DSMF ¶¶ 52, 55. Accordingly, they appeared to have none of the three negative characteristics that Ms. Joyce had. DSMF ¶¶ 53, 56. Mr. Lombardi and Mr. Lent both considered Tammy Glazier and Robert Kitch to be more suitable candidates than Ms. Joyce. DSMF ¶¶ 54, 57.

---

[18] Ms. Joyce denied this statement, contending that Mr. Dean had a prior conviction for operating after suspension (OAS). PRDSMF ¶ 48. She says that the Postal Service treated her leaving the scene conviction differently than it treated Mr. Dean's OAS conviction. *Id.*

Ms. Joyce contends that the record reveals that in the Interview Certification, Mr. Dean denied having any prior criminal convictions. PRDSMF Attach. 1, *Paul Dean Interview Certification*, at 2. However, beside the box for criminal conviction, the initials "LB" appear with the following notation: "OAS – driving." *Id.* Ms. Joyce says that this notation confirms that Mr. Dean had a prior conviction for operating after suspension. PRDSMF at 2. In its response, the Postal Service submitted a supplemental declaration from Lynn Bickford in which she says that it is not unusual for applicants to check the "yes" box because they are not certain whether infractions are crimes. DRPSAMF ¶ 2 (citing Attach. 1, *Decl. of Lynn Bickford*, ¶ 7). The Postal Service says that Mr. Dean answered the question "yes" on his application and that when the Postal Service checked on his criminal history, it determined that the OAS charge was a driving conviction and therefore not considered a crime for Postal Service purposes. *Id.* ¶¶ 3-12. It further explains that Ms. Bickford understood that some OAS convictions are traffic infractions and others are Class E misdemeanors and she concluded that Mr. Dean's was an infraction. *Id.* ¶¶ 11-12.

From the Court's perspective, there are two issues here. The first is what the Postal Service understood about Mr. Dean's criminal history when it made the decision. Here, the Court is satisfied that the ultimate decision-makers, Mr. Lombardi and Mr. Lent, thought that Mr. Dean did not have any countable criminal convictions. The Court discusses the second issue, whether the Postal Service's conclusion about the significance of his criminal record reflects discriminatory bias against Ms. Joyce, in its section on pretext.

Based on the information available to Mr. Lombardi and Mr. Lent, Michael Morin had not been fired from any previous employment and did not have a history of erratic employment. DSMF ¶ 58. Michael Morin did list a period of partial employment, from July 2005 to March 2008, during which time he managed an apartment building and was a stay-at-home father. This was not considered to demonstrate a pattern of erratic employment. DSMF ¶ 59. Michael Morin did admit to having been convicted in 1997 of three Class D misdemeanors, which appeared to be related to the break-up of a romantic relationship.[19] DSMF ¶ 60. Accordingly, Michael Morin had one of the three negative characteristics that Ms. Joyce had, but Mr. Lombardi and Mr. Lent both considered him to be a more suitable candidate than Ms. Joyce. DSMF ¶¶ 61-62.

Based on the information available to Mr. Lombardi and Mr. Lent, Richard Renault had no prior criminal convictions or charges, had not been fired from any previous employment, and did not have a history of erratic employment. DSMF ¶ 63. Although Richard Renault had indicated on his employment application that he had been fired in the past, he clarified that he had in fact merely been laid off from an automobile dealership due to slow sales. This was not considered to

---

[19] Ms. Joyce denied a part of this statement that asserted that Mr. Morin provided an explanation about his criminal convictions "without being asked." PRDSMF at 2. She states that a "[l]etter was written at interview and witnessed by Lent at the request of Bickford." *Id.* She cites pages 1 through 3. *Id.* The Postal Service responded that the handwritten notation—"discuss—need details in writing"—merely confirms that Mr. Morin was required to memorialize his explanation. DRPRDSMF ¶ 60. The Postal Service contends that the logical inference is that Mr. Morin orally explained his prior convictions and orally expressed remorse, and then wrote down his explanation. *Id.* The Court agrees with Ms. Joyce that because the Postal Service's assertion relies on an inference in its favor, the Court is required to draw the inference in her favor at this stage. The Court has not considered the Postal Service's assertion that Mr. Morin gave his explanation "without being asked" and it has not included this phrase in its recitation of the facts.

constitute a firing.  DSMF ¶ 64.  Additionally, he appeared to have two periods of unemployment during the ten years prior to his submission of his employment application.  DSMF ¶ 65.  The first, June 1998 to August 1998, was followed by nine years of unbroken employment at Maine Mall Motors.  *Id.*  The second, January 2007 to March 2008, after Richard Renault was laid off from the automobile dealership, occurred during a period of high unemployment.  This was not considered to demonstrate a pattern of erratic employment.  *Id.*  Accordingly, he appeared to have none of the three negative characteristics that Ms. Joyce had.  DSMF ¶ 66.  Moreover, he claimed a ten-point veterans' preference for having served in the United States Marine Corps and for receiving a purple heart award for injuries sustained while serving in Vietnam.  DSMF ¶ 67.  Mr. Lombardi and Mr. Lent both considered Richard Renault to be a more suitable candidate than Ms. Joyce.  DSMF ¶ 68.

Based on the information available to Mr. Lombardi and Mr. Lent, Robert Samson had no prior criminal convictions or charges, had not been fired from any previous employment and did not have a history of erratic employment.  DSMF ¶ 69.  Robert Samson did list two periods of unemployment.  The first, from August 2001 to August 2003, occurred while he was a full-time college student.  DSMF ¶ 70.  The second, from July 2006 to January 2007, occurred shortly after he had graduated from college.  *Id.*  This was not considered to demonstrate a pattern of erratic employment.  *Id.*  Accordingly, he appeared to have none of the three negative characteristics that Ms. Joyce had.  DSMF ¶ 71.  Mr. Lombardi and Mr.

Lent both considered Robert Samson to be a more suitable candidate than Ms. Joyce.  DSMF ¶ 72.

Based on the information available to Mr. Lombardi and Mr. Lent, Rachel Stevenson had not been fired from any previous employment and did not have a history of erratic employment.  DSMF ¶ 73.  She did indicate that she had been laid off from one position in January 2006 due to office restructuring, but this was not considered to constitute having been fired.  DSMF ¶ 74.  Rachel Stevenson admitted that she had been charged with and had pleaded guilty to a misdemeanor charge of theft in 2002, a theft that consisted of her stealing numerous items from a retail store.[20]  DSMF ¶ 75; PRDSMF at 2.  She explained the incident to Mr. Lombardi, indicated that it had been an honest mistake on her part, and expressed remorse, assuring him that it would not happen again.  DSMF ¶ 75.  Mr. Lombardi considered that charge to constitute a prior criminal conviction or charge but recognized her expression of remorse.  *Id.*  Accordingly, Rachel Stevenson appeared to have one of the three negative characteristics that Ms. Joyce had, but Mr. Lombardi and Mr. Lent both considered Rachel Stevenson to be a more suitable candidate than Ms. Joyce.  DSMF ¶¶ 76-77.

From the perspective of Mr. Lombardi and Mr. Lent, Ms. Joyce had three relevant negative characteristics: a prior criminal conviction or charge, a work

---

[20] Ms. Joyce interposed what appears to be a qualified response to this statement, indicating that Ms. Stevenson stole numerous items.  PRDSMF at 2.  The Court reviewed the court documents Ms. Joyce attached to her response and agrees that they reflect that Ms. Stevenson stole "assorted merchandise."  *Id.* Attach. 5, *Criminal Compl.* at 1.  The Court has added this statement to the Postal Service's paragraph.  Although the Court notes Ms. Joyce's contention that Mr. Lombardi's description of the incident was "imaginative," PRDSMF at 2, Ms. Joyce's response does not otherwise deny the contents of paragraph 75.

history that demonstrated a pattern of erratic employment, and a record of having been fired from previous employment.  DSMF ¶ 78.  Although Ms. Joyce explained the incident to Mr. Burton, Mr. Lombardi and Mr. Lent both concluded that she had expressed no remorse for her prior criminal conviction of leaving the scene of an accident.[21]  DSMF ¶ 79; PRDSMF at 2.  Although there is no spot on the application for remorse, both Michael Morin and Rachel Stevenson included written statements of remorse in their applications; Ms. Joyce did not.  DSMF ¶ 79; PRDSMF at 2.  Ms. Joyce's charge of leaving the scene of an accident in March 2005 was more recent than Rachel Stevenson's 2002 conviction and was significantly more recent than Michael Morin's 1997 conviction.  DSMF ¶ 80.

The Postal Service explained its hiring decisions based on employment history.  First, Ms. Joyce had been previously fired from employment; only one selected applicant had previously been fired.[22]  DSMF ¶ 81; PRDSMF at 2.  The applicant who had previously been fired—Richard Dean—did not have any previous criminal convictions or charges and did not have a history of erratic employment.  DSMF ¶ 81.

---

[21] Ms. Joyce pointed out that there is no spot on the application for remorse.  PRDSMF at 2.  She says that Mr. Burton, the interviewer, discussed and accepted her explanation, but that Mr. Lombardi and Mr. Lent drew "false and inaccurate conclusions."  *Id.*  The Court has accepted Ms. Joyce's assertion that she told Mr. Burton about this incident.

[22] Ms. Joyce said that she explained that she had been fired because after working for less than four months, she had been "lied to and harassed," she "quit the same time they were planning to fire me," and she had listed the event for purposes of "transparency on my application."  PRDSMF at 2.  Ms. Joyce explains but does not contradict the Postal Service's statement and therefore the Court has included it.  Ms. Joyce seems not to object to the portion of the statement that involves Mr. Dean.

Next, with regard to Ms. Joyce's erratic work history, the Postal Service says that, in the seven years before her employment application, Ms. Joyce had had six periods of unemployment of two months or more.[23]  DSMF ¶ 82; PRDSMF at 2.  The year 2002 was the only one from 2001 through 2008 during which she did not have at least two months of unemployment.  *Id.*  However, in arriving at this conclusion, the Postal Service discounted the fact that Ms. Joyce was engaged in seasonal employment and that, from May 2006 until the interview, she was a full-time college student, obtaining a BA in psychology.  *Id.*  None of the selected applicants indicated more than two periods of prior unemployment, with most of those justified by parenting requirements (Morin and Bouchey) or full-time college attendance (Samson).  DSMF ¶ 83.

The Postal Service also states that, with regard to Ms. Joyce's previous experience with the Postal Service, she worked as a distribution clerk from 1983-1987.  DSMF ¶ 84.  However, Ms. Joyce had been trained at LSM, FSM, Registry Clerk, and Data Technician positions.[24]  PRDSMF at 2.  The relatively new Mail Handler position for which Ms. Joyce was considered generally involved transporting mail from place to place, loading and unloading trucks, cancelling mail, and similar tasks.  DSMF ¶ 85.  The position included very little work that would benefit from or require any preexisting skills.  DSMF ¶ 86.  Everyone hired

---

[23] Ms. Joyce interposed a qualified response.  PRDSMF at 2.  She said that the Postal Service counted seasonal work and her period as a full-time college student against her.  *Id.*  The Court has added Ms. Joyce's explanation to its recitation of facts.

[24] The Court added this sentence pursuant to Ms. Joyce's qualified response.  PRDSMF at 2.  Although Ms. Joyce objected to the Postal Service's paragraphs 85 through 88, her response focused solely on paragraph 84.

for the position would be placed on a 90-day probationary period and would be trained on the proper procedures and techniques to follow for the tasks required of the position.  DSMF ¶ 87.  Accordingly, Ms. Joyce's prior postal service experience as a distribution clerk, twenty-one years prior to the date she interviewed for the Mail Handler position, would not have had a significant impact on her suitability as a candidate for the Mail Handler position.  DSMF ¶ 88.  The bulk of Ms. Joyce's work experience in the two decades before her interview was in bartending and the food service industry.  DSMF ¶ 89.  The Postal Service considered the three negative characteristics—prior criminal conviction or charges, prior firing, and erratic work history—to be important because they spoke to the applicant's reliability, diligence, capability, and honesty.  DSMF ¶ 90.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  For summary judgment purposes, "genuine" means that "a reasonable jury could resolve the point in favor of the nonmoving party," and a "material fact" is one whose "existence or nonexistence has the potential to change the outcome of the case." *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (citations omitted).

"The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case." *Clifford v. Barnhart*, 449 F.3d

276, 280 (1st Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  In determining whether this burden is met, the Court must "view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor."  *Id.*  However, the Court is not "required to 'accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory, or imaginative statement' made by a party."  *Bonefont-Igaravidez v. Int'l Shipping Corp.*, 659 F.3d 120, 123 (1st Cir. 2011) (quoting *Torrech-Hernández v. Gen. Elec. Co.*, 519 F.3d 41, 47 (1st Cir. 2008)).

Although the Court "view[s] the evidence in the light most favorable to the nonmovant, as to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal quotation marks omitted).  "This evidence cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial."  *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quotation marks and citation omitted).  "Even in employment discrimination cases where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."  *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003) (citation omitted).

## III.   DISCUSSION

Ms. Joyce initiated three discrimination claims: a disability-based ADA claim; an age-based ADEA claim; and a gender-based Title VII claim.  Where the plaintiff does not have direct evidence of discrimination, courts follow the burden-shifting analysis introduced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court case establishing the order of proof in discrimination cases.  *See Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 31 (1st Cir. 1990).  Direct evidence in this context "refers to 'a smoking gun' showing that the decision-maker *relied upon* a protected characteristic in taking an employment action." *PowerComm, LLC v. Holyoke Gas & Elec. Dep't*, 657 F.3d 31, 35 (1st Cir. 2011) (citing *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 421 (1st Cir. 1996)).

As Ms. Joyce lacks direct "smoking-gun" evidence on her discrimination claims, the Court applies the *McDonnell Douglas* burden-shifting framework to all three of her claims.  *See Ramos-Echevarria v. Pichis, Inc.*, 659 F.3d 182, 186 (1st Cir. 2011) (plaintiff "may prove [an ADA case] indirectly by using the *prima facie* case and burden shifting methods that originated in *McDonnell Douglas*"); *Ortiz-Rivera v. Astra Zeneca LP*, 363 Fed. Appx. 45, 46 (1st Cir. 2010) ("[p]laintiffs making a case under the ADEA with indirect evidence may use the burden shifting analysis outlined in *McDonnell Douglas*"); *Prescott v. Higgins*, 538 F.3d 32, 40 (1st Cir. 2008) ("[t]he familiar *McDonnell Douglas* framework governs Title VII . . . claims").

### A.    *McDonnell-Douglas* Framework

This now familiar analysis consists of three stages.  First, as the would-be employee, Ms. Joyce must establish a prima facie case of discrimination.  *See Goncalves v. Plymouth Cnty. Sheriff's Dep't*, 659 F.3d 101, 105 (1st Cir. 2011) ("First, the plaintiff must show a prima facie case of employment discrimination").

At the second stage, if Ms. Joyce has made out a prima facie case, the Postal Service may rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the adverse employment action.  *See Martinez-Burgos v. Guayama Corp.*, 656 F.3d 7, 10 (1st Cir. 2011).  "This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains the claimant's at all times."  *Phair v. New Page Corp.*, 708 F. Supp. 2d 57, 63 (D. Me. 2010) (quoting *Mesnick*, 950 F.2d at 823).

Finally, if the Postal Service has eliminated the presumption of discrimination by articulating a legitimate reason, the burden shifts back to Ms. Joyce to demonstrate that the Postal Service's proffered reason is mere pretext and that the true reason for not hiring her is discriminatory.  *See Martinez-Burgos*, 656 F.3d at 12; *see also Goncalves*, 659 F.3d at 105 ("the ball returns to the plaintiff's court, in which she must prove by a preponderance of the evidence that defendant's alleged nondiscriminatory reason was in fact a pretext for discrimination").

## B.    The *Prima Facie* Showing

A plaintiff bringing a discriminatory failure-to-hire claim establishes a *prima facie* case by demonstrating: (1) that she is a member of a protected class; (2) that she was qualified for the position to which she applied; (3) that, despite her

29

qualifications, she was not hired; and (4) that a person possessing similar or inferior qualifications was hired. *See Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010). "Meeting the initial prima facie requirement is 'not especially burdensome,'" *Martinez-Burgos*, 656 F.3d at 10 (quoting *Greenberg v. Union Camp Corp.*, 48 F.3d 22, 26 (1st Cir. 1995)), because a *prima facie* discrimination inference requires only a "modest" showing. *See Lockridge v. Univ. of Me. Sys.*, 597 F.3d 464, 470 (1st Cir. 2010). The *prima facie* case should "identify those circumstances where the employer's actions, if left unexplained, are more likely than not based on unlawful discrimination." *Lewis v. City of Boston*, 321 F.3d 207, 216 (1st Cir. 2003). "Satisfaction of the prima facie burden creates a rebuttable presumption that discrimination prompted the challenged adverse employment action." *Martinez-Burgos*, 656 F.3d at 12.

### 1.   ADA Claim

Ms. Joyce claims that the Postal Service intentionally and wrongfully refused to hire her on the basis of her disability in violation of the ADA. She says that she is substantially limited with respect to major life activities, namely lifting and working. According to Ms. Joyce, at the time the Postal Service did not hire her, she was disabled within the meaning of the ADA and either had a record of her disability or was regarded by the Postal Service as having such a disability.

The ADA makes it unlawful for any employer to discriminate against a qualified individual with a disability. 41 U.S.C. § 12112(a). To establish a claim under the ADA, an employee must prove, by a preponderance of the evidence, that:

30

(1) she was disabled within the meaning of the ADA; (2) she was qualified to perform the essential functions of the job; and (3) the employer took an adverse employment action against her because of the alleged disability. *See Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 32 (1st Cir. 2011). Where, as here, the employee lacks direct evidence, "courts generally use the *McDonnell Douglas* burden-shifting scheme." *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir. 1999).

Ms. Joyce "stumbles at the very first step—making out a *prima facie* case showing that [s]he has a disability as that term is used in the ADA." *Ramos-Echevarria*, 659 F.3d at 187. She merely alleges that at the time the Postal Service did not hire her, "Plaintiff Joyce was disabled within the meaning of the ADA . . . insofar as she had an impairment that substantially limited one or more major life activities, had a record of such an impairment, or was regarded by the USPS as having such an impairment." *Compl.* ¶ 26. According to Ms. Joyce, the Postal Service "intentionally and wrongfully refused to hire [her] on the basis of her disability in violation of the ADA." *Compl.* ¶ 27.

All the Court has to go on is Ms. Joyce's complaint, in which she claims, "[i]n 1986, when Plaintiff previously was employed by the USPS, Plaintiff injured her shoulder and right upper extremity, for which she lost time from work and received [federal workers compensation] benefits . . . through 1997." *Compl.* ¶ 3. Although the Court has an obligation to "rehearse the facts in the light most agreeable to" Ms. Joyce, this is true only so long as the favorable light is "consistent with record

support." *Ahern v. Shinseki*, 629 F.3d 49, 51 (1st Cir. 2010). Here, Ms. Joyce has failed to present any evidence that her shoulder injury persisted after 1997 and there is no suggestion in the record that she had any physical disabilities when she reapplied for Postal Service employment eleven years later. Ms. Joyce provides no further detail as to how her claimed disability limited a major life activity, the nature of the record of her impairment, or how it was that the Postal Service regarded her as having such an impairment.

"To deflect summary judgment, . . . [Ms. Joyce] must demonstrate that [the Postal Service] was aware of her record of impairment, and that its knowledge of her record of impairment" influenced its hiring decision. *Trafton v. Sunbury Primary Care, P.A.*, 689 F. Supp. 2d 180, 189-90 (D. Me. 2010). Here, Ms. Joyce fails to demonstrate any facts upon which the Court could find that she had a disability within the meaning of the ADA and she does not dispute the Postal Service's assertion that the hiring decision-makers did not know of her disability. Her allegations are precisely the types of "unsupported, subjective, [and] conclusory . . . statement[s]" the First Circuit described as insufficient to generate a material fact in the summary judgment context. *Bonefont-Igaravidez*, 659 F.3d at 123. Because Ms. Joyce has not met her burden of showing that the Postal Service was aware of her impairment and that the knowledge influenced its hiring decision, the Court concludes that her ADA claim does not survive summary judgment. [25]

---

[25] Apart from the Complaint, which references Ms. Joyce having previously "injured her shoulder and right upper extremity," she provides no evidence to support her motion against summary judgment on the ADA claim. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argument, are deemed waived." *Martinez-Burgos v. Guayama Corp.*, 656 F.3d 7,

### 2.    The ADEA and Title VII Claims

#### a.    The ADEA Claim

Ms. Joyce next claims that the Postal Service intentionally and willfully denied her a Mail Handler position because of her age in violation of the ADEA. She points out that she was 52 years old when she applied and that, of the eight applicants ultimately hired, only two were older, and she asserts that all were substantially less qualified for the Mail Handler position.

The ADEA makes it unlawful for any employer "to fail or refuse to hire . . . or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1)).[26]  To make a claim that her non-hiring was violative of the ADEA, a plaintiff bears the burden of proving that her age was the determinative factor in her not being hired.  *Mesnick*, 950 F.2d at 823.  Where, as here, the employee lacks direct evidence, the First Circuit instructs the Court to "utilize the burden-shifting framework developed by the Supreme Court to facilitate the process of proving discrimination."  *Bonefont-Igaravidez*, 659 F.3d at 123 (citing *McDonnell Douglas*, 411 U.S. at 802-05).

#### b.    Title VII Claim

Ms. Joyce also claims that she was intentionally and wrongfully denied a Mail Handler position because of her sex in violation of Title VII.  In support, she

---

10 (1st Cir. 2011) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).  Ms. Joyce is *pro se* and the non-moving party so the Court chose to address her ADA claim, but, because she failed to fully develop her ADA argument, could have simply deemed the issue waived.

26 The ADEA limits the protected class to those forty years of age or older.  29 U.S.C. § 633a(a).  Ms. Joyce qualifies.

observes that five of the eight hired Mail Handlers were men and she claims that each was substantially less qualified than she was.

Title VII makes it unlawful "to fail or refuse to hire . . . or otherwise discriminate against any individual . . . because of such individual's . . . sex."  42 U.S.C. §2000e-2(a)(1).  In order to make a claim that her non-hiring was in violation of Title VII, a plaintiff bears the burden of proving that her gender was the determinative factor in her not being hired.  *Gomez-Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 662 (1st Cir. 2010).  Where, as here, there is no direct evidence of discrimination, the First Circuit directs the Court to "apply the familiar burden shifting framework" to Title VII claims.  *Martinez-Burgos*, 656 F.3d at 10 (citing *McDonnell Douglas*, 411 U.S. at 802-05).[27]

### c.     The *Prima Facie* Case

Because both of the remaining claims require similar application of the *McDonnell-Douglas* burden-shifting analysis, the Court addresses them in tandem.  Viewing the record in the light most favorable to Ms. Joyce, the Court concludes that she has satisfied her *prima facie* burden.  First, the evidence shows that, as a 52-year-old woman at the time of the alleged discrimination, she is a member of a protected class for both ADEA and Title VII purposes.  Second, she applied for the Postal Service's Mail Handler position.  Taking the facts in the light most favorable

---

[27] Under Title VII, Ms. Joyce "must exhaust her administrative remedies before initiating a complaint of discrimination in federal court."  *Farris v. Shinseki*, 660 F.3d 557, 562 (1st Cir. 2011).  In her complaint, Ms. Joyce avers that she exhausted her administrative remedies and received a final decision from the EEOC.  The Postal Service does not disagree, and the EEOC administrative record provided to the Court supports the conclusion that Ms. Joyce did indeed exhaust all administrative remedies before filing suit in this Court.

to Ms. Joyce, she was at least arguably qualified for the position she sought.  *See Rathbun v. Autozone, Inc.*, 361 F.3d 62, 74 (1st Cir. 2004).  Third, Ms. Joyce was not hired for the position of Mail Handler.  Fourth and finally for *prima facie* purposes, the Postal Service hired eight people whose credentials, making all reasonable inferences in the Plaintiff's favor, were more or less comparable to Ms. Joyce's.  *See id.*

Ms. Joyce has established a *prima facie* case on both her ADEA and Title VII discrimination claims.  The burden now shifts to the Postal Service to provide a legitimate, nondiscriminatory reason for its employment decision.

### C.    Legitimate and Non-Discriminatory Reason

At the second *McDonnell Douglas* stage, the Postal Service bears only the burden of production, not persuasion, which it has satisfied by supplying a legitimate and nondiscriminatory justification for failing to hire Ms. Joyce.

In support of its decision not to hire Ms. Joyce, the Postal Service cites three "strikes" against Ms. Joyce—she displayed an erratic employment history, had a past criminal conviction, and had previously been fired from a position.[28]  First, an applicant garnered one strike for having had a prior criminal charge or conviction.  Second, an applicant would receive one strike if he or she had been fired from a previous position.  Third, a strike would be levied if an applicant's employment history demonstrated a pattern of erratic employment.

---

[28] The record also shows that Mr. Burton gained a less than favorable opinion of Ms. Joyce during the interview and that he passed on his impressions—that Ms. Joyce seemed aggressive and questioned his ability to conduct interviews—to Mr. Lent and Mr. Lombardi.  Nevertheless, Mr. Burton recommended Ms. Joyce for the position and the Postal Service does not claim that her behavior at the interview influenced its decision not to hire Ms. Joyce for the Mail Handler position.

Each of these three criteria is facially non-discriminatory and presents a proper area of employer concern for job applicants. *See Hopkins v. Blommer Chocolate Co.*, No. 02-5335 EDL, 2003 WL 22416474, at *4, 2003 U.S. Dist. LEXIS 18813, at *11 (N.D. Cal. Oct. 14, 2003) (holding that employer's concerns about applicant's extensive criminal record and unstable work history were legitimate and nondiscriminatory reasons for not hiring candidate); *Hill v. U.S. Postal Serv.*, 522 F. Supp. 1283 (S.D.N.Y. 1981) (discussing the role of prior criminal convictions in Postal Service hiring); *Turner v. City of Philadelphia Office of Controller*, Civil Action No. 96-8570, 1997 WL 799454, at *5, 1997 U.S. Dist. LEXIS 20807, at *13-14 (E.D. Pa. Dec. 30, 1997) (holding that applicant plaintiff's argument that employer "should not have considered the plaintiff's termination from a previous job [wa]s meritless" where applicant had held a variety of jobs, had been fired from previous job, and employer determined other applicants "were more qualified and more reliable candidates than the plaintiff, based on their recent employment experiences"); *Hawkins v. Mary Hitchcock Mem'l Hosp.*, 22 Fed. Appx. 21, 22 (1st Cir. 2001) ("[h]ere, the employer's stated reasons—poor references, *an erratic work history*, and the like—are legitimate on their face, and the plaintiff's attempt to explain away those data, whether or not persuasive, does not vitiate the employer's right to rely on them") (emphasis supplied).

In determining the suitability of the candidates, Mr. Lombardi and Mr. Lent tallied the three non-discriminatory strike characteristics, hiring only those who had none or just one strike against them. The Postal Service supplied affidavits,

transcripts, and internal employment materials to support this hiring explanation. By producing evidence of a nondiscriminatory reason for its decision not to hire Ms. Joyce and instead to hire eight other applicants, the Postal Service has satisfied its burden.  "[T]he inference raised by plaintiff's prima facie case vanishes" and the burden shifts back to Ms. Joyce.  *Rathbun*, 361 F.3d at 71-72.

### D.    Pretext for Discrimination

#### 1.    Standard

To survive summary judgment, Ms. Joyce must now demonstrate that the Postal Service's "legitimate reasons . . . were not its true reasons, but were a pretext for discrimination."  *Velez v. Thermo King de Puerto Rico, Inc.*, 585 F.3d 441, 447-48 (1st Cir. 2009).  "[T]he burden of persuasion on the ultimate issue of intent remains with the plaintiff."  *Petitti*, 909 F.2d at 34.

"Where, as here, the case arises on the employer's motion for summary judgment, the plaintiff's task is to identify a genuine issue of material fact with respect to whether the employer's stated reason for the adverse employment action was a pretext for a proscribed type of discrimination."  *Rathbun*, 361 F.3d at 72 (citing *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 62 (1st Cir. 1999)).  To defeat summary judgment, "the plaintiff 'must produce evidence to create a genuine issue of fact with respect to two points: whether the employer's articulated reason for its adverse action was a pretext and whether the real reason was . . . discrimination.'" *Quinones v. Buick*, 436 F.3d 284, 289-90 (1st Cir. 2006) (quoting *Thomas*, 183 F.3d at 62)*; see also Rowe v. Aroostook Med. Ctr.*, No. 1:09-cv-182-DBH, 2010 WL

3283065, at *14, 2010 U.S. Dist. LEXIS 102969, at *49-50 (D. Me. Aug. 17, 2010) (citing *Boyajian v. Starbucks Corp.*, 587 F. Supp. 2d 295, 304 (D. Me. 2008)) ("To do this, [the applicant] must adduce evidence that the decisionmaker's articulated explanation is false and that discriminatory animus can reasonably be inferred from the employer's dissembling").

"Pretext may be established by demonstrating 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons.'" *Boyajian*, 587 F. Supp. 2d at 304-305 (quoting *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 56 (1st Cir. 2000)). Pretextual evidence might include "evidence of differential treatment, evidence of discriminatory comments, statistical evidence, and comparative evidence." *Rathbun*, 361 F.3d at 72. In some cases, "'a plaintiff may survive summary judgment not by unearthing positive evidence of a discriminatory motive, but by showing that an employer's proffered justification for its adverse employment action was such that a trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.'" *Phair*, 708 F. Supp. 2d at 63 (quoting *Ronda-Perez v. Banco Bilbao Vizcaya Argentaria-Puerto Rico*, 404 F.3d 42, 44 (1st Cir. 2005)).

In assessing pretext, the Court focuses "on the perception of the decisionmaker," or, in other words, "whether the employer believed its stated reason to be credible." *Velez*, 585 F.3d at 452. "[I]t is not enough for a plaintiff merely to

impugn the veracity of the employer's justification; [s]he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real and unlawful motive of discrimination." *Id.* (quoting *Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 246 (1st Cir. 2006)).

### 2.    The Postal Service's Three Strikes Rule

According to Ms. Joyce, the Postal Service's reasons "were false, pre-textual and lies and were not based on my qualities and experience but on my age, sex and past injury claims." *Pl.'s Opp'n* at 3.  She goes on to compare her candidacy to those of the successful applicants.   Essentially, Ms. Joyce attempts to adduce inconsistencies and contradictions in the Postal Service's proffered reasons by offering evidence that it treated other candidates with similar qualifications—or, more precisely, disqualifications—differently from her.

To demonstrate pretext, Ms. Joyce first claims that similarly situated employees were treated unequally.  Specifically, she targets the Postal Service's use of its "three strikes" disqualifying characteristics rule because her application received all three strikes.  Ms. Joyce does not dispute the Postal Service's contention that its criteria, including the disqualifying strikes, were appropriate.  Instead, she claims that Mr. Lombardi and Mr. Lent did not levy the strikes equally upon the candidates. *Pl.'s Opp'n* at 3.  She points to information about several applicants— Rachel Stevenson, Michael Morin, Paul Dean, Amanda Bouchey, Richard Renault,

and Robert Samson—and claims that they either had or should have had the same strikes but were ultimately selected.

### a.      Strike One – Criminal Record

Regarding the criminal record strike, Ms. Joyce makes two arguments.  First, she observes that both Rachel Stevenson and Michael Morin had criminal convictions and she asserts that, unlike her criminal conviction, their criminal records were not held against them, suggesting that consideration of her criminal record was mere pretext for discrimination.   According to Ms. Joyce, her LSA conviction was held to a different standard than Ms. Stevenson's and Mr. Morin's criminal convictions.

Ms. Joyce's second contention is directed toward the way the Postal Service handled Paul Dean's OAS conviction.  She says that, although her LSA conviction was similar to his OAS conviction, the Postal Service treated the two differently, clearing him of responsibility yet imposing a strike against her.

Turning to the first contention, Ms. Joyce notes that in 1997 Mr. Morin was convicted of three Class D misdemeanors and in 2002 Ms. Stevenson was convicted of misdemeanor theft.  She says that these convictions were serious.  The nature of the Morin convictions is not detailed, but in his March 11, 2008 letter to the Postal Service, which Arthur Lent signed, Mr. Morin explained that the convictions arose from a romantic relationship that was "breaking up and she started seeing another person."  *Pl.'s Opp'n* Attach. 2, *Letter from Michael Morin* (Mar. 11, 2008).  In the letter, Mr. Morin admitted that "the statements I made to him were inappropriate

at best." *Id.* Regarding Ms. Stevenson, Ms. Joyce supplies a copy of the misdemeanor criminal complaint against Ms. Stevenson showing that she "admittedly stole numerous articles" from a Wal-Mart.

Ms. Joyce argues that both Mr. Morin and Ms. Stevenson were given the chance to explain their convictions and express remorse and she was not. She adds that Ms. Stevenson was the beneficiary of Mr. Lombardi's "wrongful and imaginative interpretation of what may have occurred" in her conviction. *Pl.'s Opp'n* at 2. Ms. Joyce says she was treated differently because she was offered "no spot on the application for remorse" and Mr. Lombardi and Mr. Lent "drew false and inaccurate conclusions" about her conviction. *Pl.'s Opp'n* at 2.

Ms. Joyce also claims that despite Paul Dean's conviction for operating after suspension, "Dean did not list his OAS conviction" in his application. *Pl.'s Opp'n* at 2. The Postal Service contradicts Ms. Joyce's assertion. *Def.'s Reply* at 5-6. It supplied an affidavit from Lynn Bickford that states that Mr. Dean did reveal the OAS conviction on his application, that she checked his criminal history and found no record of the OAS, and that she concluded that a conviction for OAS in Maine was not a Class E misdemeanor, but simply a traffic infraction. DRPSMF ¶¶ 1-12. Furthermore, the Dean Interview Certification demonstrates that the Postal Service was aware of his OAS conviction. *Id.* Attach. 1, *Interview Certification*, at 2 (noting "OAS-driving"). In view of the substantial evidence that the Postal Service was aware of Mr. Dean's OAS conviction, the Court does not credit Ms. Joyce's unsubstantiated allegation that he failed to reveal the prior conviction.

Ms. Joyce also claims that Mr. Dean's OAS conviction was the "same point violation as mine."[29]   *Id.* at 2.   Here, the Postal Service says that Ms. Bickford checked Mr. Dean's criminal record, did not find the OAS conviction listed, and concluded it was not a Class E misdemeanor.   DRSMF ¶¶ 1-12.   As it turns out, Ms. Bickford was incorrect.   An OAS citation was not a traffic infraction; it was a Class E misdemeanor.   29 M.R.S. § 2412-A ("[a] person commits a Class E offense if that person operates a motor vehicle on a public way . . . when that person's license has been suspended").[30]

It is difficult to know what to make of Ms. Joyce's claim that Mr. Morin and Ms. Stevenson were given the opportunity to explain their convictions and she was not.   Whether Mr. Morin and Ms. Stevenson were afforded the opportunity or whether they themselves took the initiative and offered satisfactory explanations is not clear.   Nor is it clear whether Ms. Joyce had the same chance to express remorse, did not recognize it, or simply ignored the opportunity.   In any event, the Postal Service did count both Mr. Morin's and Ms. Stevenson's convictions as a strike against their applications.   The unanswered factual issue is whether the treatment was differential.   *See Rathbun*, 361 F.3d at 72 (noting that pretextual

---

[29] *Pl.'s Opp'n* at 2.  Ms. Joyce also argues that her conviction for leaving the scene of an accident was a driving violation and that both Mr. Morin and Ms. Stevenson had driving violations they did not list.  The record before the Court, however, is silent on Mr. Morin's and Ms. Stevenson's driving records and any weight they carried in the Postal Service's decision-making.  The Court has not addressed this argument.

[30] In 2009, the Maine Legislature amended 29-A M.R.S. § 2412-A to make operating after suspension a traffic infraction provided that the reason for the suspension fit within certain categories.  29-A M.R.S. § 2412-A, sub-§8, as enacted by P.L. 2009, c. 297 § 2, *An Act to Amend Operating After Suspension Laws by Creating an Infraction Alternative for Certain Kinds of Operating After Suspension* (effective September 12, 2009).  Whether Dean's suspension fell within one of those limited categories is immaterial because, as of 2008 when the hiring decision was made, OAS had been a Class E misdemeanor in Maine for some time.

evidence might include "evidence of differential treatment"). The Court concludes that Ms. Joyce's claim of differential treatment on this point survives summary judgment by the narrowest of margins.

By contrast, her claim of differential treatment as to Paul Dean survives by a much wider margin. Ms. Joyce has raised a legitimate factual question as to whether the Postal Service treated Mr. Dean's and Ms. Joyce's convictions the same way. Neither Mr. Dean's OAS conviction nor Ms. Joyce's LSA conviction appeared in the criminal histories that the Postal Service received from the state of Maine. But Ms. Bickford concluded—erroneously—that the absence of a conviction in Mr. Dean's record meant that his OAS conviction was only a traffic infraction; whereas, she concluded from the absence of an LSA conviction on Ms. Joyce's criminal history record that she had committed a misdemeanor. The result is that one applicant received a strike while another similarly situated applicant did not.

Even though the Court's focus is "on the perception of the decisionmaker" and "whether the employer believed its stated reason to be credible," *Velez*, 585 F.3d at 452, Ms. Joyce can survive summary judgment by "adduc[ing] evidence that the decisionmaker's articulated explanation is false," *Boyajian*, 587 F. Supp. 2d at 304, so that "a trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory motive," *Phair*, 708 F. Supp. 2d at 63. This she has done. Ms. Joyce has demonstrated inconsistencies in the Postal Service's proffered legitimate reason and raised a factual question of whether the Postal Service engaged in differential treatment. Even though the

Postal Service imposed a strike against both Mr. Morin and Ms. Stevenson, the question of how the Postal Service considered their expressions of remorse remains unanswered. The same is true regarding the Postal Service's divergent assessment of the significance of the absence of criminal history for Mr. Dean and Ms. Joyce.

Viewing the evidence in the light most favorable to her, Ms. Joyce has demonstrated differential treatment between herself and three successful candidates on the Postal Service's consideration of prior criminal history.

### b.      Strike Two – Erratic Employment History

The second criterion was applicant employment history. Ms. Joyce claims that this reason is also a feint to cover up the Postal Service's true discriminatory motives. She says that the Postal Service "coined the term 'erratic employment history'" to apply only to her past employment record, and it changed other applicants' listings of unemployment to "laid off, not really fired and working at home or with family." *Pl.'s Opp'n* at 3.

Ms. Joyce's employment history revealed six periods of unemployment, which the Postal Service treated as evidence of an erratic employment history and a second strike. The Court turns first to whether the record, viewed in the light most favorable to Ms. Joyce, reveals consistent application of this criterion.

The record reflects that Ms. Joyce had six periods of unemployment of two months or more in the seven years before her Postal Service application. With the exception of 2002, Ms. Joyce had been unemployed for at least two months each year from 2001 to the time of her application in 2008. In concluding that these

periods of unemployment qualified for imposition of a strike against her, the Postal Service treated the period from May 2006 until her 2008 interview—when she was a full-time college student, obtaining a Bachelor of Arts in psychology—as evidence of an erratic employment history.  Furthermore, the Postal Service did not excuse the periods of unemployment brought about by seasonal work.

Ms. Joyce insists that the Postal Service excused similar examples of unemployment in the successful applicants.  Regarding enrollment in college, one successful applicant, Robert Samson, had been unemployed from August 2001 to August 2003, while he was a full-time college student, and again from July 2006 to January 2007, after he graduated from college.  The Postal Service did not hold these periods of unemployment against Mr. Samson and yet it treated Ms. Joyce's time in college as evidence of an erratic employment history.

There is no direct corollary to Ms. Joyce's seasonal work.  However, the Postal Service did not treat Mr. Morin's more than two-year period of partial employment when he managed an apartment building and was a stay-at-home dad as evidence of a history of erratic employment.  If there is a justifiable difference between partial employment and seasonal work, it is difficult to define.  Nor did the Postal Service hold Amanda Bouchey's four-year unemployment period when she was a stay-at-home mom against her.  Perhaps the closest example is Richard Renault, who was laid off a couple of times at the car dealership due to an economic downturn.  The Postal Service did not consider an economic layoff evidence of an erratic employment history but did consider Ms. Joyce's seasonal work, presumably

occasioned by economic inactivity in the off-season, as evidence of an erratic work history.  The Court agrees with Ms. Joyce that the Postal Service itself appears somewhat erratic in defining "erratic employment history."  Viewing the evidence in the light most favorable to her, Ms. Joyce succeeds in demonstrating differential treatment between herself and four successful candidates on the Postal Service's consideration of prior work history.

### c.    Strike Three – Previous Firing

In addition to criminal convictions and employment history, the third factor was whether an applicant had previously been fired from a job.  Ms. Joyce attempts to prove pretext by pointing out what she considers inconsistencies between the Postal Service's treatment of her and the successful candidates.

Paul Dean admitted to having been fired from a position for excessive absences and Mr. Lombardi and Mr. Lent counted this as a strike against him. There is no inconsistency there.  Richard Renault also said that he had been fired in the past but clarified that he had actually been laid off during a slow sales period. The Postal Service explained that it did not consider a lay-off to constitute a firing and so did not give Mr. Renault a strike.  Mr. Lombardi and Mr. Lent did, however, impose a strike on Ms. Joyce's application for having been previously fired.  Though she maintains that she was going to quit anyway, Ms. Joyce does not dispute that she had been fired.

From the record, Ms. Joyce's factual disputes would not allow a jury to infer that this third characteristic of the proffered reason was mere pretext meant to disguise the Postal Service's true discriminatory motive in failing to hire Ms. Joyce.

### d.    Aggregation of Strikes and Other Hiring Considerations

In assessing whether the employer's professed reason is "a coverup for a discriminatory decision," the Court "must look at the total package of proof offered by the plaintiff." *Benoit*, 331 F.3d at 174. The Court next considers whether, taking Ms. Joyce's version of the facts "as part of an aggregate package of proof," she has demonstrated the existence of an issue of material fact as to the three strikes in the aggregate or any other hiring criteria. *Velazquez-Ortiz v. Vilsack*, 657 F.3d 64, 75 (1st Cir. 2011).

Boiled down, the question is whether the issues of material fact that Ms. Joyce has demonstrated—uneven treatment of criminal history and uneven definitions of erratic employment—would have made a difference in the Postal Service's scoring of the candidates. There are two ways to view this question. First, if Ms. Joyce had been treated the way the Postal Service treated other applicants, would she have received three strikes? Second, if the other candidates had been treated the way the Postal Service treated Ms. Joyce, would their strikes have increased to Ms. Joyce's level? Again, the Court views these factual questions in the light most favorable to her.    Regarding Ms. Joyce, if the absence of a criminal record in her state of Maine criminal history sheet had been treated the same way the Postal Service treated Mr. Dean's, she arguably would have had two, not three

47

strikes.  Furthermore, if her period as a full-time student had been treated the same way the Postal Service treated Mr. Samson's period as a full-time student, and if her seasonal work had been treated the same way the Postal Service treated Mr. Renault's period of unemployment, she arguably would not have received a strike for erratic employment.  She would have had one strike and remained in the running with the other candidates.

Flipping the analysis, if Mr. Dean's criminal conviction had been treated the way the Postal Service treated Ms. Joyce's criminal conviction, he would have had two strikes against him—prior conviction and prior firing.  At the same time, Mr. Dean did not, by any account, have an erratic employment history and he was entitled to a five-point veterans' preference.  If Mr. Samson's period as a full-time student had been treated the way the Postal Service treated Ms. Joyce's period as a full-time student, it is possible, though not certain, that he would have received one strike for erratic employment.[31]  By any reckoning, Mr. Samson did not have strikes for prior convictions or a prior firing.   If Mr. Renault's lay-off period had been treated the way the Postal Service treated Ms. Joyce's seasonal work, it is possible, though unlikely, that he would have received one strike for erratic employment.[32]

So far Ms. Joyce has proven that the Postal Service engaged in at least some differential treatment of its Mail Handler candidates.   Once the combination of

---

[31] It is not certain because Mr. Samson listed two periods of unemployment: August 2001 to August 2003 when he was a full-time student and July 2006 to January 2007 when he looked for work after graduating.   The record does not reveal whether if these periods were held against Mr. Samson, he would have received a strike for erratic employment.

[32] The reason it is unlikely that Mr. Renault would have received a strike is that the period he was laid off is comparatively limited—January 2007 to March 2008—in the face of a nine-year period of steady employment.

decreasing Ms. Joyce's strikes and increasing some of the successful applicants' strikes is calculated, Ms. Joyce has a colorable argument that the other strengths in her application, such as her qualifications, education, prior USPS service, and experience, would have carried the day.

To be clear, "[t]he applicant's 'personal opinion regarding her own job qualifications is not sufficiently probative on the issue of pretext.'" *Boyajian*, 587 F. Supp. 2d at 305 (quoting *Cruz-Ramos v. Puerto Rico Sun Oil Co.*, 202 F.3d 381, 385 n.3 (1st Cir. 2000)).  However, Ms. Joyce's case is not simply a bare assertion that she was better qualified than the successful applicants.  *See Deslauriers v. Napolitano*, 738 F. Supp. 2d 162, 179 (D. Me. 2010) (quoting *Rathbun*, 361 F.3d at 74) ("[w]hen an employer claims to have hired . . . one person over another on the basis of qualifications, the question is not which of the aspirants was better qualified, but, rather, whether the employer's stated reasons for selecting one over the other were pretextual").   "[P]roof of competing qualifications will seldom, in and of itself, be sufficient to create a triable issue of pretext," *Rathbun*, 361 F.3d at 74, but Ms. Joyce has offered more than just proof of her competing qualifications.

The Court must also be careful not to "second-guess the business decisions of an employer, nor . . . impose its subjective judgments of which person would best fulfill the responsibilities of a certain job." *Phair*, 708 F. Supp. 2d at 63 (quoting *Petitti*, 909 F.2d at 31); s*ee also Melendez v. Autogermana, Inc.*, 622 F.3d 46, 53 (1st Cir. 2010) (quoting *Mesnick*, 950 F.2d at 825) ("[c]ourts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers'

nondiscriminatory business decisions"). But the First Circuit, in *Thomas*, made a "general point about the third stage of the *McDonnell Douglas*[] framework," noting:

> in the context of a motion for summary judgment, courts must be very cautious about sua sponte finding non-discriminatory reasons for apparently disparate treatment. Although the presumption of discrimination has dropped out of the case by the third stage of the *McDonnell Douglas*[] framework, its rationale remains relevant: discrimination, rarely explicit and thus rarely the subject of direct evidence, may be proven through the elimination of other plausible non-discriminatory reasons until the most plausible reason remaining is discrimination.

183 F.3d at 61. Mindful of this rationale, the Court concludes that genuine issues of material fact remain as to whether the Postal Service's explanations are implausible, inconsistent, and contradictory and could thus lead "a factfinder [to] infer that the employer did not act for the asserted non-discriminatory reasons.'" *Boyajian*, 587 F. Supp. 2d at 304-305 (quoting *Santiago-Ramos*, 217 F.3d at 56).

It remains to be seen whether Ms. Joyce will prove her case before a jury. The Postal Service's uneven application of its hiring standards does not necessarily mean that it discriminated against her due to age and gender. Furthermore, the age and gender mix of the successful candidates suggests that the Postal Service was not reluctant to hire women or fifty-two year olds. At the same time, it is notable that each of the successful female applicants was 29 years old at the date of hire, leaving the question as to whether, in its hiring, the Postal Service did not discriminate against women so long as they were young women. At the summary judgment stage, where the employer's purported reasons for its employment action

are successfully brought into doubt, the next logical question arises: if not that, then what?  Ms. Joyce is entitled to have this question answered by a jury.

## IV.   CONCLUSION

The Court GRANTS the Plaintiff's Motion to Supplement (Docket # 27).  The Court DENIES the Defendant's Motion for Summary Judgment on Counts I and II but GRANTS the Defendant's Motion for Summary Judgment as to Count III (Docket # 18).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 28th day of February, 2012